Law Offices
# WILLIAM J. RUOTOLO
ATTORNEYS & COUNSELLORS AT LAW

WILLIAM J. RUOTOLO, JD, CPCU, CWCLA ***
J. D/A. MCKENNA, RN
─────
OF COUNSEL
ROBERT E. MCINTYRE, MD, JD, FACS, FCCP, Dr. PS*
RONALD R. KEARNS, RN, JD*

* ADMITTED IN MA
* ADMITTED IN RI
³ ADMITTED IN DC

2131 WARWICK AVENUE
WARWICK, RI 02889
(401) 739-7404

1200 EAST STREET
WESTWOOD, MA 02090
(781) 320-0607

WILLIAMJRUOTOLO@JUSTICE.COM
FAX (401) 633-6381

October 28, 2003

[stamp: NCMIC NOV 4 2003 HEIDI BEVIS CLAIMS  # 33625]

Heidi Bevis
Claim Representative
NCMIC INSURANCE COMPANY
1452 29th Street, Suite 102
West Des Moines, IA 50266-1307

RE:  Dennis Michael Hanrahan and
     Janice Hanrahan
     v.
     Kerry Goyette, D.C. and
     Christine Huber, D.C.
     Civil Docket # NOCV2001-00811

     Policy # MP00073894
     Named Insured: Christine P. Huber, D.C.

     Policy # MP00904210
     Named Insured: Kerry A. Goyette, D.C.

     Policy # MP00073894
     Named Insured: Community Chiropractic, P.C.

**DEMAND UNDER G.L. c. 93A AND c. 176D FOR SETTLEMENT AGAINST KERRY GOYETTE, D.C., CHRISTINE HUBER, D.C., AND COMMUNITY CHIROPRACTIC, P.C.**

## I.
## INTRODUCTION

Dear Ms. Bevis:

Please accept this communication as a demand under G.L. c. 93A and c. 176D for settlement of the injuries sustained by Dennis Michael Hanrahan and Janice Hanrahan in the amount of six million dollars ($6,000,000.00) representing the aggregate policy limits of Defendant, Kerry Goyette, D.C., Christine Huber, D.C., and Community Chiropractic, P.C. as a result of the negligent acts and omissions of Defendant, Kerry Goyette, D.C., Christine Huber, D.C., and Community Chiropractic, P.C. in treating Dennis Hanrahan.

## II.
## THE ROLES OF THE DEFENDANTS

This is a medical malpractice action arising out of the medical care and treatment of the Plaintiff, DENNIS MICHAEL HANRAHAN ("Mr. Hanrahan" hereinafter). Mr. Hanrahan was a medical patient of the Defendants, KERRY GOYETTE, D.C. and CHRISTINE P. HUBER, D.C. and Plaintiff, JANICE HANRAHAN, is Mr. Hanrahan's wife.

Defendant, CHRISTINE HUBER, D.C., was Mr. Hanrahan's regular chiropractor who selected a substitute chiropractor, Defendant, KERRY GOYETTE, D.C., to treat him. See Exhibits Page ("EP" hereinafter) 23[1]. ("EP" refers to the "Exhibits Pages" attached to the Offer of Proof which was provided to A. Bernard Guekguezian, Esq., ANDERSON, ADLER, COHEN & HARVEY, 230 Congress Street, 10th Floor, Boston, MA 02110 and Michael P. Flammia, Esq., ECKERT SEAMANS CHERIN & MELLOTT, LLC, One International Place, 18th Floor, Boston, MA 02110 on October 30, 2001).

Defendant, KERRY GOYETTE, D.C., was the chiropractor who treated Mr. Hanrahan which resulted in serious and permanent injuries. See EP 22-24.

Defendant, COMMUNITY CHIROPRACTIC, P.C., was the was at all times herein concerned, a professional corporation, licensed in the Commonwealth of Massachusetts having neither principal place of business nor registered agent listed with the Secretary of State, Division of Corporation but having an individual by the name of Christine Huber, 58 Fuller Street, Canton, MA 02021 listed as President, Treasurer, and Clerk of COMMUNITY CHIROPRACTIC, P.C. and COMMUNITY CHIROPRACTIC, P.C., was the employer, master, or contractor of DEFENDANTS, KERRY GOYETTE, D.C. and/or CHRISTINE HUBER, D.C. or was otherwise responsible for the actions of DEFENDANTS, KERRY GOYETTE, D.C. and/or CHRISTINE HUBER, D.C.

## III.
## FACTS

Dennis Hanrahan was injured in a diving accident in 1968. At the time of his treatment by the Defendants he was a C4-C5 quadriplegic. He was employed as a receptionist at the Harvard Vanguard in Quincy, Massachusetts. As a result, his lumbar area would cause him discomfort from being placed in a seated position.

Ms. Huber selected Ms. Goyette to treat Mr. Hanrahan. See EP 23. Ms. Goyette placed a heating pad between Ms. Hanrahan's back and his wheelchair and left it there. See EP 59 and 60. She did not remove him from the wheelchair to treat him with this modality. See EP 1 and 60. That evening, November 29, 2000, Mr. Hanrahan's health care worker noticed a red spot on his lumbar area. See EP 60. He also felt uncomfortable. Because of his quadriplegia, he has decreased sensation to pain, warmth and cold on his back. See EP 1.

He was evaluated and found to have a deep second-degree burn of 7 x 5 cm with a separate area 1.5 cm lateral to this. See EP 1. Subsequent hospital admissions were required as a result of infection to the wound caused by the Defendants. See EP 61-62. He was placed under dressings

---

[1] All exhibit pages have been previously produced to the Defendants with the Offer of Proof.

2

WILLIAM J. RUOTOLO
ATTORNEYS & COUNSELLORS AT LAW

and treatments and subsequently has had partial healing. Photographs taken in May, 2001 show continued persistence of the area of the deep second-degree burn and open wound, and discussions with the patient just recently, in the month of June 2001, reveal that the wound has again broken down. See EP 63.

In this case, there is ample evidence that the Defendants deviated from the accepted standard of care and skill expected of the average qualified practitioner in their field, that harm resulted, and that the Defendants' negligence was the cause of the Plaintiffs' harm. Those facts which support the Plaintiffs' claims are as follows:

1. There was a deviation from the standard of care by Kerry Goyette, D.C., in placing a heating pad between the patient's back and his wheelchair and leaving him unmonitored and unattended. See EP 2;

2. As a direct and proximate cause of the application of the heating pad to this patient, leaving the patient unattended and unmonitored, combined with the patient's decreased ability to sense hot and cold, Kerry Goyette, D.C., caused a deep second-degree burn of 7 x 5 cm with a separate area 1.5 cm lateral to it also burned. See EP 2;

3. The selection of Kerry Goyette, D.C. by Christine Huber, D.C., to treat Dennis Hanrahan was negligent and a deviation from the standard of care given the fact that Dennis Hanrahan was a patient with diminished sensory ability combined with the procedure of placing a hot pack to his back which could result in severe burns if applied in a negligent manner and is not monitored appropriately, and Kerry Goyette, D.C., failed to recognize this as evidenced by her improper care and treatment of Dennis Hanrahan. Such a selection of a chiropractor that is untrained or unqualified to treat a patient in the position in which Dennis Hanrahan presented in November, 2000 was a deviation from the standard of care. See EP 2; and

4. The deviations from the standards of care, as mentioned above, by both Kerry Goyette, D.C. and Christine Huber, D.C., was, in the opinion of Joseph P. Dineen, M.D., to a reasonable degree of medical certainty, the cause of the deep second-degree burn of 7 x 5 cm with a separate area 1.5 cm lateral to it also burned, the hospitalizations for infection of the wound to his back, the resulting injury which Dennis Hanrahan has to this day, and the loss of employment from November 2000 to the present. See EP 2.

The records of the Defendants also reflect admissions that Mr. Hanrahan sustained third degree burns at the hands of the Defendants or under who's direction and control the Defendant's were acting.

The Plaintiffs' claims of liability are:

a. Defendants' misrepresentations to Mr. Hanrahan that they were knowledgeable, skillful, and competent to diagnose and treat the Plaintiff's medical condition on or around November 29, 2000 and thereafter;

b. Defendants' failure to adequately and properly diagnose Mr. Hanrahan's medical condition on or around November 29, 2000 and thereafter, and their failure to prescribe proper and timely treatment for said condition;

3

Law Office
WILLIAM J. RUOTOLO
ATTORNEYS & COUNSELLORS AT LAW

c.  Defendants' failure to recognize, or have knowledge to recognize their inability to diagnose and treat Mr. Hanrahan, when the Defendant knew, or should have known, in the exercise of due care, the foreseeable consequences of their inability to properly and skillfully provide Mr. Hanrahan with acceptable medical and diagnostic services;

d.  Defendants' failure to possess or negligent failure to exercise the same degree of skill, training, and care as is possessed by average qualified members of the medical profession taking into account advances in the profession;

e.  Defendants' failure to inform and to warn of the risks involved in or associated with Mr. Hanrahan's condition and failure to inform and to warn about the treatment of said condition;

f.  Defendants' negligent acts and omissions in the performance of chiropractic services upon Mr. Hanrahan;

g.  The Defendant's, CHRISTINE P. HUBER, D.C., negligent selection of a chiropractic physician who treated Mr. Hanrahan;

h.  The Defendant's, CHRISTINE P. HUBER, D.C., negligent supervision of a chiropractic physician who treated Mr. Hanrahan;

i.  The Defendant's, CHRISTINE P. HUBER, D.C., negligent training of a chiropractic physician who treated Mr. Hanrahan;

j.  The Defendant's, COMMUNITY CHIROPRACTIC, P.C., negligent selection of a chiropractic physician or physicians who treated Mr. Hanrahan;

k.  The Defendant's, COMMUNITY CHIROPRACTIC, P.C., negligent supervision of a chiropractic physician or physicians who treated Mr. Hanrahan;

l.  The Defendant's, COMMUNITY CHIROPRACTIC, P.C., negligent training of a chiropractic physician or physicians who treated Mr. Hanrahan; and

m.  The Defendants' violation of CMR 233, 4.05.

The Defendants through their attorneys have been provided copies of all documents in the Plaintiffs' possession which support his claims to date. The medical records provided to the Defendants consist of:

Carney Hospital
Harvard Community Health Plan
Braintree Center
111 Grossman Dr.
Braintree, MA 02184

Harvard Vanguard Medical Assoc.
250 Hancock St.
Quincy, MA 02169

Brigham & Women's Hospital
75 Francis St.
Boston,. MA 02115

Law Office
WILLIAM J. RUOTOLO
ATTORNEYS & COUNSELLORS AT LAW

HNS
A Healthdyne Co.
The University Hospital
75 East Newton Street
Boston, MA 02118-2393

South Shore Hospital
55 Fogg Road
South Weymouth, MA 02190

Dennis Michael Hanrahan has been out of work since December, 2000 and as a result he was released from his job at Harvard Vanguard Medical Associates Quincy, MA 02169 where he was employed from 1990 to 2001 as a Switchboard Operator. He was earning $17,400.00 annually at Harvard Vanguard Medical Associates Quincy, MA. As of this date, Dennis Michael Hanrahan is still recovering from his injuries and is disabled from employment.

The Plaintiffs have provided answers to Interrogatories which indicate that Mr. Hanrahan is still out of work - one full year after he was injured by the Defendants' negligent acts or omissions. His injuries are still healing at the present time and he continues to require medical care and treatment as a result of the Defendants' negligent acts or omissions. The Defendants have also been provided with a color photograph of Mr. Hanrahan's injuries revealing its severity.

The Plaintiffs offer the case of *Marshal v. Methodist Healthcare Jackson Hosp,.* Miss,. Hinds County Cir. Ct,. No. 251-99-000984CIV, Jan. 23, 2001 for the Defendants' and their Insurers' consideration. In that case, the Plaintiff, quadriplegic, sustained third degree burns on his thigh as a result of the medical professionals' negligence. Though he claimed no lost income, the jury awarded the Plaintiff $6,000,000.00.

The Plaintiffs have responded to production requests by the Defendants in this case and have presented for their depositions in April and May of 2003. Defendants, KERRY GOYETTE, D.C. and CHRISTINE HUBER, D.C., have been deposed in August and September, 2003. Witness, Michael Pendolino, D.C. has been deposed in October, 2003. The Plaintiffs have provided close to 80 photographs depicting the Plaintiff, Dennis Michael Hanrahan's, burns and injuries which are protected by the work-product doctrine and were provided to the Defendants in hopes of facilitating settlement.

The Defendants have subpoenaed and/or have been provided with medical records, documents, bills, tax returns, and other documents from the following:

MGH Orthopedic Trauma Service
15 Parkman Street, #525
Boston, MA 02114

Boston Medical Center
P.O. Box 845235
Boston, MA 02284-5235

Keeper of Records
CVS Pharmacy
737 Bridge Street
Weymouth, MA 02191

Keeper of Records
Massachusetts Rehabilitation Commission
Administrative Offices
27 Wormwood Street
Boston, MA 02210

Keeper of Records
Hill-Rom
531 Main Street
Acton, MA 01720

Stephen T. Golden, M.D.
Healthcare South
780 Main Street
S. Weymouth, MA 02190

Centrus Premier Home Care, Inc.
225 Water Street
Plymouth, MA 02360

Caritas Carney Hospital
2100 Dorchester Avenue
Dorchester, MA 02124

Harvard Community Health Plan
Braintree Center
111 Grossman Dr.
Braintree, MA 02184

Harvard Vanguard Medical Assoc.
1250 Hancock St.
Quincy, MA 02169

Brigham & Women's Hospital
75 Francis St.
Boston, MA 02115

HNS
A Healthdyne Co.
The University Hospital
75 East Newton Street
Boston, MA 02118-2393

WILLIAM J. RUOTOLO
ATTORNEYS & COUNSELLORS AT LAW

South Shore Hospital
55 Fogg Road
South Weymouth, MA 02190

Partners' Health Care Visiting Nurses
c/o Brigham & Women's Hospital
Nursing Central Resources Department
75 Francis Street
Boston, MA 02115

The Defendants have had ample time to consider both liability and damages. Both liability and damages are reasonably clear.

## IV.
## CLAIMS OF VIOLATIONS UNDER G.L. c. 93A AND c. 176D

Massachusetts General Laws, Chapter 93A, § 2(a) provisions as follows:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

Massachusetts General Laws, Chapter 176D provisions as follows:

> (9) Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions:
>
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> (h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;
>
> (l) Delaying the investigation or payment of claims by requiring that an insured or claimant, or the physician of either, submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

7

(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

Failure to maintain complaint handling procedures; failure of any person to maintain a complete record of all the complaints which it has received since the date of its last examination, which record shall indicate in such form and detail as the commissioner may from time to time prescribe, the total number of complaints, their classification by line of insurance, and the nature, disposition, and time of processing of each complaint. For purposes of this subsection, "complaint" shall mean any written communication primarily expressing a grievance. Agents, brokers and adjusters shall maintain any written communications received by them which express a grievance for a period of two years from receipt, with a record of their disposition, which shall be available for examination by the commissioner at any time.

The Plaintiffs claim that there has been a violation by NCMIC INSURANCE COMPANY, 1452 29th Street, Suite 102, West Des Moines, IA 50266-1307 of each section of G.L. c. 176D noted above based on its handling and administration of the this claim and as such, a violation of G.L. c. 93A as well.

In response to the Plaintiffs' demand made on December 1, 2001, NCMIC INSURANCE COMPANY, 1452 29th Street, Suite 102, West Des Moines, IA 50266-1307, responded as follows:

> This letter is in response to your correspondence of December 1, 2001, which purports to be a demand for relief from Kerry Goyette, D.C., Christine Huber, D.C. and Community Chiropractic, P.C., pursuant to c. 93A. We do not believe that your correspondence fulfills the requirements of c. 93A. Moreover, for the reasons set forth below, we believe that plaintiffs, demand is premature.
>
> First, we note that the provided by Joseph Dineen, M.D. Dr. Dineen is not a chiropractor, nor does he have any special competence in chiropractic, and therefore his opinion would not be admissible with regard to the standard of care against Drs. Goyette and Huber or Community Chiropractic. As a result, the plaintiff has failed to make even a prima facie showing against the defendants.
>
> Second, no medical malpractice tribunal has yet been held in this matter. Drs. Goyette and Huber and Community Chiropractic are entitled to the findings of a medical malpractice tribunal before considering any settlement demand.
>
> Third, Dr. Goyette, by her counsel, is awaiting the production of documents by the plaintiff Dennis Hanrahan as compelled by the court. These documents, as well as the depositions of the plaintiffs, are absolutely essential in order for us to evaluate your settlement demand.
>
> Last, there is simply no support on the record for the amount of plaintiffs' demand. The case cited by plaintiffs is that of a Mississippi Circuit Court, which has no relevance to a medical malpractice claim in Massachusetts.

In summary, additional information is required before a demand for settlement can be entertained. It is simply too early in the course of discovery and litigation to consider settlement. Once all of the materials and evidence that are essential for us to evaluate settlement have been produced, we are amenable to revisiting the issue of settlement.

Please be advised that the foregoing in no way constitutes, nor should it be considered, a waiver or relinquishment by Drs. Goyette or Huber or Community Chiropractic of any and all other defenses and rights available to them under applicable law. Additionally, the foregoing in no way restricts or limits Drs. Goyette or Huber or Community Chiropractic from relying upon and asserting other facts, grounds or defenses that are now, or may become, available to them.

Thank you for your attention to this matter.

NCMIC INSURANCE COMPANY, 1452 29th Street, Suite 102, West Des Moines, IA 50266-1307, claims that "Dr. Dineen is not a chiropractor, nor does he have any special competence in chiropractic, and therefore his opinion would not be admissible with regard to the standard of care against Drs. Goyette and Huber or Community Chiropractic." This is misstatement of the law in Massachusetts. The SJC has held that:

> A medical expert need not be a specialist in the area concerned nor be practicing in the same field as the defendant. "It is well established that the professional specialty of a medical practitioner offered as a witness need not be precisely and narrowly related to the medical issues of the case. Thus, it has been held that a judge, in his discretion, properly admitted the opinions of a general practitioner in a case which related to specialized medical issues." *Kapp v. Ballantine*, 380 Mass. 186, 192-193 n.7 (1980). Accord *Commonwealth v. Boyd*, 367 Mass. 169, 182-183 (1975) (expert need not be a specialist in the field); *Gill v. North Shore Radiological Assocs.*, 10 Mass. App. Ct. 885, 886 (1980) (deeming it unnecessary "for the plaintiff's medical expert to be a specialist in the area concerned"); *Samii v. Baystate Medical Center, Inc.*, 8 Mass. App. Ct. 911, 911-912 (1979) (approving expert testimony on standard of care in obstetrics from a specialist in internal medicine familiar with subject matter). The crucial issue is whether the witness has sufficient "education, training, experience and familiarity" with the subject matter of the testimony. *Gill*, supra. *Samii*, supra. See also *Commonwealth v. Monico*, 396 Mass. 793, 803-805 (1986) (error to exclude opinion of psychologist on criminal responsibility of a criminal defendant); *Andrade v. Correia*, 358 Mass. 786, 788 (1971) (allowing chiropractor to give expert testimony "within the scope of his experience and the limited scope of the permissible practice of a chiropractor").

*Letch v. Daniels*, 401 Mass. 65, 514 N.E.2d 675 (1987). Such an intentional mischaracterization of the law is a violation of c. 93A and c. 176D.

The conclusory statement that "As a result, the plaintiff has failed to make even a prima facie showing against the defendants" is also bad faith in light of the admissions of the Defendants concerning the Plaintiff's injuries and the Offer of Proof which has been provided to the Defendants.

9

The statement that "second, no medical malpractice tribunal has yet been held in this matter. Drs. Goyette and Huber and Community Chiropractic are entitled to the findings of a medical malpractice tribunal before considering any settlement demand," does not obviate the requirement of the insurer to tender a good faith offer in response to the demand under c. 93A and c. 176D. This is violation of G.L. c. 176D which states grounds for the insurer's violation as:

> (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

The tribunal rendered a decision on March 15, 2002 in favor of the Plaintiffs with respect to Defendants, KERRY GOYETTE, D.C. and COMMUNITY CHIROPRACTIC, P.C. Still no offer of settlement has been made by NCMIC INSURANCE COMPANY.

Liability is more than reasonably clear in this case as are damages which have been enumerated in the Plaintiffs' demand of December 1, 2001 as well as in this communication. The carrier's failure to make a good faith offer is a violation of the statute.

Mandating the Plaintiffs litigate their claims is also a violation of the statute. The statement "These documents, as well as the depositions of the plaintiffs, are absolutely essential in order for us to evaluate your settlement demand." is a violation of G.L. c. 176D(9)(f).

Reference to the relevancy of the Mississippi case cited by the Plaintiffs in their December 1, 2001 demand is also indicative of the bad faith of NCMIC INSURANCE COMPANY, 1452 29th Street, Suite 102, West Des Moines, IA 50266-1307. The reference to that recent case by the Plaintiffs is indicative of the value of the claim made against the insurance policies issued by NCMIC INSURANCE COMPANY.

Concerning the comments "We do not believe that your correspondence fulfills the requirements of c. 93A. Moreover, for the reasons set forth below, we believe that plaintiffs, demand is premature," the Massachusetts Appeals Court has recently held:

> "The defendants [Allied Adjustment Service and Commercial Union Insurance Company] argue, and the motion judge found, first, that the demand letter, required under G.L.c. 93A, Sect. 9(3), was ineffective. We disagree.
>
> "A demand letter, sent '[a]t least thirty days prior to the filing of any such action,' containing 'a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered,' G.L.c. 93A, Sect. 9(3), is an absolute condition to bringing suit for damages under G.L.c. 93A. ... The demand letter must notify prospective defendants of claims arising from allegedly unlawful conduct. This gives the addressee an opportunity to 'review the facts and the law involved to see if the requested relief should be granted or denied,' thus encouraging negotiation and settlement. ... The injury suffered and the relief demanded must be set forth in a manner that enables a prospective defendant to make 'a reasonable tender of settlement.' ...
>
> "The plaintiffs' demand letter in this case, sent by their attorney on June 18, 1990, indicated that it was a demand letter, sent in accordance with the statute; it identified the [plaintiffs Walter and Dorothy] Eldredge as the claimants. As grounds for the claim

10

of unfair practice. the letter stated, 'Your office, on several occasions, has stated that there are defenses to the liability claimed, which therefore pr[e]cluded your company's acceptance of liability on behalf of Commercial Union Insurance Company.' The letter further stated that Allied had failed to appropriately investigate the incident, on the basis that no one from the company had set foot on the property (although the letter, in a footnote, admits that Allied did pay two brief visits to inspect the tank and the wall, both of which were subject of the claim). The plaintiffs conclude in the letter that these specific actions constitute a violation of G.L.c. 176D, governing unfair settlement practices. However inartfully drawn, we think that the letter 'reasonably describ[ed] the unfair or deceptive act or practice relied upon,' as required by G.L.c. 93A, Sect. 9(3).

"The letter further set forth the plaintiffs' claimed injuries in some detail: that they were left with barrels of hazardous waste on their property that they could not dispose of until Allied completed its investigation, creating an inconvenience, a substantial health hazard and an eyesore; that Clean Harbors, the company conducting the hazardous waste cleanup, had refused to continue work until it received payment from some source; that the plaintiffs were put to the task of trying to collect amounts for the cleanup from their own homeowner's insurance carrier (when the liability of [P.J.] Beeley [& Sons, Inc.] was clear and where there was no suggestion of coverage under the homeowner's policy for cleanup and remediation). We think that these claims are sufficient to identify 'the injury suffered,' G.L.c. 93A, Sect. 9(3).

"The plaintiffs' demand letter also claimed relief, asking: the full value of the cleanup proposed by Clean Harbors, then estimated to cost in the vicinity of $10,000; the cost of rebuilding a collapsed wall, at $1,000; $3,000 for loss of items stored in the cellar; an unspecified amount as reimbursement for the ruptured oil tank and the cost of the oil; and, although not highlighted but ultimately of paramount importance, 'an acceptance of full responsibility for present and future environmental hazard liability due to the spill,' for which Commercial Union ultimately paid over $300,000. We determine that the plaintiffs' latter contention that the remediation process was significantly delayed, and that they were injured by the delay was adequately raised by this language in the demand letter.

"The Eldredges next complain that the motion judge erred in ruling that, as they had failed to show 'any loss of money or property as a result of Allied's use of an unfair or deceptive act or practice declared unlawful under ... G.L.c. 176D, Sect. 3(9)(f)' they could not recover. We agree with the Eldredges.

"The language of G.L.c. 93A, Sect. 9(1), 'Any person ... who has been injured (emphasis supplied) by another person's use or employment of any method, act or practice declared to be unlawful by section two,' permits claims for injury other than for loss of money or property. ...

"In its correspondence to the Eldredges' attorney, Allied purported to represent Beeley, whose liability under G.L.c. 21E, Sect. 5(e), was clear. Less clear, but of great importance, was the issue of Commercial Union's coverage of that liability. Correspondence between Allied and Commercial Union suggested an internal concern; Allied's agent wrote that Beeley might have knowingly caused the overflow, thereby

possibly affecting Commercial Union's coverage. The significance of this internal memorandum, included in the summary judgment materials, hinting that the insurer might avoid coverage because defendant Beeley's employees pumped the oil knowing that the pipe and its whistle were defective, was never clearly conveyed to plaintiffs. At most Allied admitted 'exposure,' but suggested that there might be issues affecting 'liability.' Whether or not there was coverage of Beeley's clear liability under c. 21E was readily determinable by Allied, and whether the defendants failed to resolve this issue timely, and whether that failure, if any, caused injury to the plaintiffs, are, in addition to whether Allied's delay generally amounted to an unfair settlement practice, issues of fact meriting trial. This issue was adequately raised in the demand letter and in the pleadings and argument on summary judgment.

"Based on the foregoing, we determine that the plaintiffs' demand letter and summary judgment materials were more than 'vague and general allegations' ... and were adequate to survive a motion for summary judgment. The order of the Superior Court granting summary judgment for the defendants is reversed, and the case is remanded to the Superior Court for further proceedings."

*Eldredge, et al. v. F.J. Beeley & Sons, Inc., et al.* (Lawyers Weekly No. 81-696-00) (8 pages) (Appeals Court - Unpublished) (No. 98-P-221) (October 2, 2000).

As this communication pointed out, the December 1, 2001 was misread by the insurer as the Plaintiffs' demands under G.L. c. 93A and c. 176D. That was error. This communication constitutes the Plaintiffs' demands under G.L. c. 93A and c. 176D. Should you feel <u>this</u> communication insufficiently fulfills the requirements of G.L. c. 93A, the Plaintiffs request you advise them of your perceived insufficiencies.

NCMIC INSURANCE COMPANY has had sufficient time to conduct and investigation into the Plaintiffs' claims, to have found that liability and damages are reasonably clear, and to have made and offer of settlement in good faith. It has failed to do so.

## V.
## CONCLUSION

Based on the admissions of the Defendants, the severity of injury sustained by Dennis Hanrahan, the resulting injuries to Janice Hanrahan, the Plaintiffs demand six million dollars $6,000,000.00[2] to settle their claims against the Defendants.

A tender of the policy limits noted in the preceding paragraph is respectfully requested within Thirty (30) days of receipt of this communication after which suit will be commenced against NCMIC INSURANCE COMPANY.

---

[1] The Demand includes the claims of Dennis Michael Hanrahan and Janice Hanrahan. Claims are made under each policy ((1) Policy # MP00073894, Named Insured: CHRISTINE P. HUBER, D.C.; (2) Policy # MP00904210, Named Insured: KERRY A. GOYETTE, D.C.; (3) Policy # MP00073894, Named Insured: COMMUNITY CHIROPRACTIC, P.C.) Each of which has liability limits of $1,000,000.00/3,000,000.00 per policy. See *Pinheiro v. The Medical Malpractice Joint Underwriting Association of Massachusetts*, , 406 MASS. 288, 547 N.E.2D 49 (1989).

Law Offices
WILLIAM J. RUOTOLO
ATTORNEYS & COUNSELLORS AT LAW

Should you have any questions, please feel free to call us at (401) 739-7404. Correspondence may be addressed to 2131 Warwick Avenue, Warwick, RI 02889.

Sincerely,
Law Offices
WILLIAM J. RUOTOLO
ATTORNEYS & COUNSELLORS AT LAW

William J. Ruotolo

cc: A. Bernard Guekguezian, Esq.
ANDERSON, ADLER, COHEN & HARVEY
230 Congress Street, 10th Floor
Boston, MA 02110

Michael P. Flammia, Esq.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
One International Place, 18th Floor
Boston, MA 02110

*ncmic - 10.28.2003 - 93A & 176D demand.doc*